

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM** | **Criminal Case No. CF0099-22** |
| | Police Report No. 22-04263 |
| vs. | |
| **FRANCIS GERALD UNTALAN SAN NICOLAS, JR.,** | **DECISION AND ORDER** |
| (*aka* **Francis Gerard Untalan San Nicolas, Jr.**; *aka* **Francis Gerard San Nicolas**), | (Motion to Suppress) |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on October 25, 2023, for an evidentiary hearing on Francis Gerald Untalan San Nicolas, Jr.'s ("Defendant") Motion to Suppress (Aug. 7, 2023). Defendant was represented by Assistant Public Defender David J. Highsmith. Assistant Attorney General Kristine B. Borja appeared for the People of Guam ("People"). Having duly considered the parties' briefing and oral arguments, witness testimony, and applicable law, the Court hereby **DENIES** Defendant's Motion to Suppress.

## BACKGROUND

Defendant has been indicted on charges of (1) Possession of a Controlled Substance (as a Third-Degree Felony) under 9 GCA § 67.401.2(a) and (b), and (2) Operating a Motor Vehicle Without a License (as a Violation) under 16 GCA § 3101(a). On August 7, 2023, Defendant filed his Motion to Suppress. Defendant argues he was arrested and searched without a warrant, which violates the Fourth Amendment to the United States Constitution; he thus argues that any items found during the search, as well as any statements he made to police thereafter, must be suppressed. *See*

*generally* Mot. Suppress (Aug. 7, 2023). The People filed an Opposition, arguing Defendant's arrest was lawful and that the search of his person falls under the "search incident to arrest" exception to the Fourth Amendment. *See generally* Opp. Mot. Suppress (Sept 5, 2023). On October 25, 2023, the Court heard the motion, received testimony from Guam Police Department ("GPD") Officer Pewtress, and thereafter took the matter under advisement.[1]

## FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following findings of fact:

1. On the night of February 12, 2022, in the Agana Heights area, Officer Pewtress observed a vehicle make two turns without using a turn signal. Digital Recording at 10:15:18 AM (Mot. Hr'g, Oct. 25, 2023). He also observed that the front license plate of the vehicle was obscured by a "dark smoky cover." *Id.* at 10:15:55 AM.

2. Officer Pewtress recognized this vehicle as one often driven by Defendant, a person who Officer Pewtress knew was a suspect in a separate criminal mischief investigation. *Id.* at 10:16:23 AM.

3. Officer Pewtress followed the vehicle to the Cliff Hotel. *Id.* at 10:17:25 AM. Defendant exited his vehicle, and then Officer Pewtress exited his own vehicle and approached Defendant in the parking lot. *Id.* at 10:18:08 AM; *id.* at 10:22:41 AM.

4. Officer Pewtress informed Defendant that he saw him commit traffic violations. *Id.* at 10:18:25 AM.

5. Officer Pewtress asked Defendant to produce his driver's license and vehicle documentation, but Defendant was unable to do so. *Id.* at 10:18:35 AM.

6. Officer Pewtress observed that Defendant seemed nervous: his voice was shaking, his hands were fidgeting, his eyes were darting around, and his feet were shuffling. *Id.* at 10:20:08 AM. Officer Pewtress testified that in his experience, these were "pre-flight indicators." *Id.*

7. Officer Pewtress then detained Defendant in handcuffs. *Id.* at 10:20:18 AM. He testified that this was intended as a "precaution," but that he also would have had probable cause to make an arrest due to the traffic violations. *See id.*

8. At this point, in Officer Pewtress's view, while "[he] had secured him in handcuffs, [he] had not formally arrested him yet." *Id.* at 10:21:10 AM.

9. Officer Pewtress estimated that at this point, the time that had elapsed since he first approached Defendant was "about one to two minutes." *Id.* at 10:21:33 AM.

10. After detaining Defendant, Officer Pewtress conducted a "pat-down" of Defendant's body for "safety reasons . . . for any weapons he may have had." *Id.* at 10:20:51 AM.

11. Officer Pewtress noticed what appeared to be "two big bundles" inside the pockets of Defendant's shorts. *Id.* at 10:21:48 AM.

12. Officer Pewtress asked Defendant for permission to check inside his pockets, and Defendant allegedly gave consent. *Id.* at 10:21:52 AM.

13. At the time he asked Defendant for consent to the search, Officer Pewtress did not have his weapon drawn. *Id.* at 10:22:20 AM. There were no other officers present. *See id.*

14. Inside Defendant's pockets, Officer Pewtress found two syringes, one of which contained a "white frosty substance," and a resealable plastic bag containing suspected methamphetamine. *Id.* at 10:22:00 AM.

15. Officer Pewtress then transported Defendant to the Central Precinct in Sinajana for further investigation. *Id.* at 10:25:30 AM.

16. At central precinct, Officer Pewtress advised Defendant of his Miranda rights. *Id.* at 10:26:20 AM. Defendant signed a form voluntarily waiving these rights. *Id.* at 10:29:49 AM. Defendant then allegedly admitted that the items found in his pocket contained "ice," which is a slang term for methamphetamine. *Id.* at 10:31:15 AM.

## DISCUSSION

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures and is made applicable to Guam via section 1421b(c) of the Organic Act of Guam. *People v. Camacho*, 2023 Guam 9 ¶ 14. "To pass muster under the Fourth Amendment, searches and seizures must be reasonable under the circumstance." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). "Warrantless . . . seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions." *Id.* ¶ 15 (citing *People v. Cundiff*, 2006 Guam 12 ¶ 26).

### A. The Initial Traffic Stop Was Lawful

The parties agree—as does the Court—that Officer Pewtress had a constitutionally sufficient basis to effectuate a traffic stop on Defendant.[2] A traffic stop is "unquestionably a seizure within the meaning of the Fourth Amendment." *People v. Rasauo*, 2011 Guam 1 ¶ 26 (citing *Berkemer v.*

*McCarty*, 468 U.S. 420, 440 (1984)); *see also Brendlin v. California*, 551 U.S. 249, 255 (2007) ("The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver even though the purpose of the stop is limited and the resulting detention quite brief."). However, the Fourth Amendment "permits brief detentions when a police officer has a reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *Cundiff*, 2006 Guam 12 ¶ 40. Although reasonable suspicion is "not readily, or usefully, reduced to a neat set of legal rules," *Camacho*, 2023 Guam 9 ¶ 21, reasonable suspicion "would certainly be present if officers observed a traffic violation," *People v. Mansapit*, 2016 Guam 30 ¶ 16.

Here, Officer Pewtress testified that he saw Defendant driving a vehicle that appeared to have a covered license plate. Defendant concedes that the license plate of his vehicle was covered. Mot. Suppress at 3. This is a traffic violation in Guam under 16 GCA § 7129(a). Officer Pewtress therefore had reasonable suspicion to suspect that Defendant had committed a traffic violation, and thus a constitutionally sufficient basis to conduct a traffic stop.

**B. Defendant Was Detained, Not Under Arrest**

Defendant contends that constitutional infirmity began when Officer Pewtress placed handcuffs on him. Defendant reasons that this action converted the traffic stop from a temporary detention into an unlawful "arrest." *See* Mot. Suppress at 3-4. The People concur that this action amounted to an arrest, but contend that it was a lawful arrest because Officer Pewtress had probable cause to believe Defendant had committed traffic violations in his presence. *See* Opp. Mot. Suppress at 2-3; *see also People v. Tuncap*, 2014 Guam 1 ¶ 14 ("Perhaps the most common exception to the warrant requirement is an arrest made with probable cause.").

However, the Court is not convinced that Defendant was "arrested" at the time of the events in question. As noted above, at the outset of the traffic stop, Defendant was only detained. *See United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (an ordinary traffic stop is "a limited

4

seizure more like an investigative detention than a custodial arrest."). Admittedly, the incident here differs from an ordinary traffic stop because Defendant was placed in handcuffs. *See People v. Stier*, 168 Cal. App. 4th 21, 27 (Ct. App. 2008) ("Handcuffing substantially increases the intrusiveness of a detention and is not part of a typical detention."). However, it is widely held that handcuffing does not *automatically* transform a detention into arrest. *See, e.g., United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982); *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993); *Lundstrom v. Romero*, 616 F.3d 1108, 1122 (10th Cir. 2010); *People v. Celis*, 93 P.3d 1027, 1032-33 (Cal. 2004) (citing several Ninth Circuit cases for the premise that handcuffing a defendant "do[es] not convert a detention into an arrest.").

Defendant asserts that under *People v. Cundiff*, 2006 Guam 12 and *People v. Tuncap*, 2014 Guam 1, the use of handcuffs transformed the detention into an arrest because that action "would have communicated to a reasonable person that he was not free to leave." Mot. Suppress at 4. It is true that under Guam law, a person may be deemed "arrested" in that circumstance. *See Cundiff*, 2006 Guam 12 ¶¶ 20-24. But over-applying that principle in the traffic context would lead to the conclusion that nearly all traffic stops are "arrests." *See Berkemer*, 468 U.S. at 436 ("Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so."). Accordingly, courts have recognized that a traffic stop—even one where the defendant is physically restrained—is not tantamount to an arrest.

Two Ninth Circuit cases—*United States v. Patterson*, 648 F.2d 625 (9th Cir. 1981) and *United States v. Bautista*, 684 F.2d 1286 (9th Cir. 1982)—are instructive here. In *Patterson*, the defendant argued that he was not "free to leave," and therefore arrested, when officers ordered him to get out of his vehicle. The court rejected this argument, explaining:

> A valid stop is not transformed into an arrest merely because law enforcement agents momentarily restrict a person's freedom of movement. They may impose such a restriction to maintain the status quo while making an initial inquiry, provided the force displayed is not excessive under the circumstances. A contrary result would

5

leave agents powerless to perform their investigative functions without the cooperation of suspects.

*Patterson*, 648 F.2d at 633 (internal citation omitted). In *Bautista*, the defendant similarly argued he was not "free to leave," and thus arrested, when he was placed in handcuffs. The Ninth Circuit extended the *Patterson* rationale to the handcuffing, explaining that a "brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a *Terry* stop and does not necessarily convert the stop into an arrest." *Bautista*, 684 F.2d at 1289.

From these cases, it is clear that the use of physical restraints during a traffic stop does not *automatically* transform a detention into an arrest. Instead, physical restraints are merely one factor in the "fact-specific inquiry [] guided by the general Fourth Amendment requirement of reasonableness." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002) (internal citations omitted). To determine whether an arrest was made, the Court must "consider all the circumstances surrounding the encounter between the individual and the police by evaluating not only how intrusive the stop was, but also whether the methods used by police were reasonable given the specific circumstances." *Id.* (cleaned up).

Officer Pewtress testified that he placed Defendant in handcuffs as a "precaution" to prevent Defendant's flight. A police officer may apply handcuffs during a detention when an individual "takes action at the scene that raises a reasonable possibility" of flight. *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996); *see also Rabin v. Flynn*, 725 F.3d 628, 639 (7th Cir. 2013) (Rovner, J., concurring) (collecting cases where flight risk justified use of handcuffs). Officer Pewtress testified that during his interaction with Defendant, he observed that Defendant appeared nervous and was making certain physical movements—such as shuffling his feet and darting his eyes—which, in Officer Pewtress's professional experience, are consistent with the actions of a person preparing to flee. Officer Pewtress therefore had a reasonable basis to believe Defendant was a flight risk, and thus to apply handcuffs to negate that precise risk. *Cf. Bautista*, 684 F.2d at 1289 (handcuffing held

6

reasonable where "the suspects appeared extremely nervous and [one] kept pacing back and forth and looking, turning his head back and forth as if he was thinking about running.").

In response, Defendant suggests that "many people would be nervous during a traffic stop." Mot. Suppress at 3. While this is presumably true, the Court is inclined to credit the officer's professional experience,[3] which indicated to him that the specific combination of factors here—not only Defendant's nervousness, but his physical movements as well—were indicative of a flight risk. Generally speaking, an officer's professional experience, and actions taken in accordance with that experience, merit some deference from the courts. *See United States v. Boden*, 854 F.2d 983, 993 (7th Cir. 1988) ("we will not substitute our judgment for that of the officers as to the best methods to investigate."); *Martinez v. Nygaard*, 831 F.2d 822, 827 (9th Cir. 1987) (similar). Furthermore, other factors strengthen the appearance of a flight risk. Officer Pewtress's testimony indicates that the interaction with Defendant took place at night, that Officer Pewtress was the only officer present, and that Defendant was on foot and outside of his vehicle during the interaction. Each of these circumstances would have made it easier for Defendant to flee and harder for Officer Pewtress to prevent him from doing so. Under these circumstances, Officer Pewtress's use of handcuffs to prevent flight was reasonable.

The handcuffs are therefore one factor in the analysis of whether the detention had escalated into an arrest, but other circumstances must be taken into account as well. Other relevant factors in this analysis include whether the interaction "lasts for an unreasonably long time or if officers use unreasonable force." *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007). Here, the detention did not last an "unreasonably long time." The whole interaction took place within just a few minutes, which suggests that Officer Pewtress "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Officer Pewtress also did not use "unreasonable force." The Court has already found the use

7

of handcuffs to be reasonable under the circumstance, and there is no evidence that other force was used. Officer Pewtress testified that he did not have his weapon drawn, and no evidence suggests that Defendant was ordered to the ground, held down, or otherwise further restrained. The Court also finds it significant that Officer Pewtress testified that at this moment in time, he had not decided to arrest Defendant for his traffic violations. While an officer's subjective opinion of whether an arrest was effectuated is not dispositive, the fact that he did not make a formal arrest of Defendant weighs in favor of a finding that Defendant *was not* under arrest.

Under the totality of the circumstances, the Court concludes that Defendant was initially detained, and the use of the handcuffs alone did not escalate the detention into an arrest. Taking account of all the relevant circumstances, Defendant was still detained at this moment.

**C. Officer Pewtress's Pat-Down Did Not Violate the Fourth Amendment**

Since Defendant was detained, not arrested, the next question is whether Officer Pewtress's "pat-down" of Defendant was lawful under the Fourth Amendment. The Guam Supreme Court has held that "[p]atdowns of stopped suspects are permitted for officer safety, but only where the officer both has reason to believe that the suspect is armed and dangerous and limits the pat-down to searching for weapons." *Tuncap*, 2014 Guam 1 ¶ 26; *see also Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993) (a pat-down is not "a general warrant to rummage and seize at will."). Officer Pewtress testified that after placing Defendant in handcuffs, he conducted a "pat-down" of Defendant's body for the purpose of determining whether Defendant was armed. Officer Pewtress also testified that he had observed that Defendant appeared to have large unknown items (or "bundles" of items) in his shorts, and that he knew Defendant was a suspect in at least one other pending criminal investigation. Taking these facts together, Officer Pewtress had a reasonable basis to believe Defendant may be armed and to conduct a brief "pat-down" in order to search for weapons. The pat-down therefore did not violate the Fourth Amendment.

8

## D. Defendant Consented to the Search of His Person

Defendant argues that since he did not give consent until after he was illegally detained, any consent he gave to the search was invalid. Mot. Suppress at 4 (citing *People v. Chargualaf*, 2001 Guam 1 ¶ 15). The Court has already determined that the detention was not unlawful but will still examine whether Defendant's consent to the search was voluntary.

Officer Pewtress's testimony established that the "two big bundles" in Defendant's pockets were not weapons. *See Terry v. Ohio*, 392 U.S. 1, 29-30 (1968) (an officer may seize weapons felt during a pat-down). It did not establish whether Officer Pewtress believed these items were contraband. *See Dickerson*, 508 U.S. at 376 (an officer may seize "contraband" felt during a pat-down, but only if the "contour or mass makes its identity immediately apparent."). Under these circumstances, the Fourth Amendment would forbid Officer Pewtress from simply reaching into Defendant's pockets and seizing the items. However, Officer Pewtress's testimony indicates that he asked Defendant for permission to remove the items that were inside the pockets, and that Defendant gave him permission to do so.

"Through voluntary consent, police may search an area, without probable cause, over which the person possesses adequate authority." *Camacho*, 2023 Guam 9 ¶ 18 (quoting *People v. Santos*, 1999 Guam 1 ¶ 33). Voluntariness is "determined based on all relevant circumstances in a particular case." *Id.* (quoting *Santos*, 1999 Guam 1 ¶ 19). The Guam Supreme Court has noted eleven factors that are "helpful" in this analysis, although these factors are "neither exhaustive nor dispositive" and "should not be applied mechanically." *Id.* ¶ 20. The factors include:

- Whether the defendant was in custody;
- Whether the arresting officers have their weapons drawn;
- Whether Miranda warnings have been given;
- Whether the defendant was told he has a right not to consent; and
- Whether the defendant was told a search warrant could be obtained.
- Whether the consenting person was detained and the length of time of the questioning;

9

- Whether the consenting person was threatened, physically intimidated, or punished by the police;
- Whether the person relied upon promises or misrepresentations made by the police;
- Whether the person was in custody or under arrest when the consent was given;
- Whether the person was in a public or a secluded place; or
- Whether the person objected to the search or stood by silently while the search occurred.

*Id.* A court should consider these factors in order to ascertain which facts and circumstances bear on the issue of voluntariness. *See id.* ¶ 22.

In *Camacho*, the Guam Supreme Court analyzed several of these factors before concluding that the defendant did not give consent voluntarily. However, the facts and circumstances here differ from those in *Camacho* in several important ways. First, Defendant was detained at the time of questioning, and unlike the arrest in *Camacho*, the detention here was lawful. *Cf. Camacho*, 2023 Guam 9 ¶ 23 ("Camacho was unlawfully under arrest."). Second, Defendant's detention was brief, as the testimony suggests the interaction proceeded from the initial encounter to the handcuffing to the pat-down in only less than two minutes. *Cf. id.* ¶¶ 4-7, 22 (search of the *Camacho* defendant's vehicle followed several "phases" of investigation). Third, there is no evidence that Defendant objected to the search. *Cf. id.* ¶ 23 ("Camacho objected to the search of his car when [the officer] first inquired). Fourth, Defendant apparently gave consent the first time he was asked to do so, so there was no repeated effort by Officer Pewtress to gain his consent. *Cf. id.* ¶ 29 ("we note that tests from other circuits consider as a factor whether consent was prompted by repeated requests."). Fifth, there is no evidence that Defendant was induced to give consent by any promise or (mis)representation by Officer Pewtress. *Cf. id.* ¶ 23 ("there is some ambiguity as to whether Camacho relied on misrepresentations concerning consent to search."). The Court also finds it relevant that Defendant was in a public or semi-public place (the parking lot of the Cliff Hotel) when he was asked to give consent, not in the backseat of a police car like the *Camacho* defendant. *Cf. id.* ¶ 7 n.2.

10

The fact that Defendant was handcuffed weighs in favor of a finding that consent was not voluntary, but it is not dispositive to the voluntariness analysis. *See, e.g., United States v. Kon Yu-Leung*, 910 F.2d 33, 41 (2d Cir. 1990) ("Nor does a finding of coercion follow from the fact that [defendant] was handcuffed."); *United States v. Strache*, 202 F.3d 980, 986 (7th Cir. 2000) (search upheld as other factors showing voluntariness outweighed show of involuntariness due to handcuffs); *United States v. Telcy*, 362 Fed. Appx. 83, 86-87 (11th Cir. 2010) (similar). Considering all of the circumstances, the People have met their burden of proving that Defendant gave voluntary consent for Officer Pewtress to search his pockets. And since voluntary consent is an exception to the Fourth Amendment prohibition on warrantless searches, *see Camacho*, 2023 Guam 9 ¶ 18, the consensual search did not violate the Fourth Amendment. Accordingly, the physical evidence discovered in that search need not be suppressed.

Additionally, Defendant has argued for the suppression of statements he allegedly made to the police after he was taken to Central Precinct, reasoning that these statements followed from an unlawful arrest. However, since Defendant was neither arrested nor unlawfully detained at that time, no Fourth Amendment violation had occurred prior to the search. There was also no Fourth Amendment violation when Defendant was actually arrested, after the suspected methamphetamine and associated paraphernalia were discovered. This evidence gave Officer Pewtress probable cause to arrest Defendant for possession of a controlled substance, which is a felony offense under Guam law. A police officer can make a warrantless arrest, *inter alia*, "[w]henever the officer has reasonable cause to believe that the person to be arrested has committed an offense in the officer's presence." 8 GCA § 20.15(a)(1);[4] *see also Cundiff*, 2006 Guam 12 ¶ 26 (outlining constitutional rationale for probable cause requirement). Therefore, Defendant's arrest following the discovery of the suspected methamphetamine was a lawful arrest, and it supplies no Fourth Amendment basis for suppressing Defendant's later statements.[5]

11

## CONCLUSION

Based on the above analysis, the Court concludes that Defendant was detained—not arrested—prior to the search of his person. That detention, and the pat-down that followed, was reasonable under the circumstances and therefore did not violate the Fourth Amendment. The search of Defendant's person was effectuated after Defendant gave voluntary consent, and it did not violate the Fourth Amendment either. Accordingly, there is no Fourth Amendment basis on which to suppress either the physical evidence discovered in the search or the statements made following arrest. Defendant's motion is therefore **DENIED.**

**SO ORDERED** *nunc pro tunc* January 23, 2024: _____APR 0 3 2024_____ .

**HONORABLE ALBERTO E. TOLENTINO**
Judge, Superior Court of Guam

SERVICE VIA EMAIL
I acknowledge that an electronic
copy of the original was e-mailed to:

_____AG, PDR_____

Date: 4|3|24 Time: 3:45
cavlevio (W)

Deputy Clerk, Superior Court of Guam

12